Morrell v. Fickle.

STATE OF TENNESSEE *ex rel.* JOHN R. MORRELL *et als.*
v. R. P. FICKLE, Ch'n, etc.

1. ACT CONSTRUED. Act of 1879, Ch. 127, "to establish a Chancery and Law Court at Bristol, in the county of Sullivan," is constitutional.

2. CONSTITUTIONAL LAW. *Acts of Legislature. Subject and title.* Art. 2, sec. 17, of the Constitution, prohibiting laws from being passed which embrace more than one subject, that subject to be expressed in the title, and providing that all acts which repeal or amend former laws shall recite in their caption or otherwise the title or substance of the law repealed, revived or amended, is to be liberally construed, otherwise useful legislation would be unnecessarily embarrassed.

3. SAME. *Repeal of former laws.* If the Legislature pass an act repealing a law without reciting in its caption or otherwise, the title or substance of the law reperled, and a subsequent act is passed at the same session and within a few days of the same time of the first act, repealing the law which was attempted to be repealed by the first act, the two acts may fairly be supposed to have been in the minds of the legislators at the same time, and will be regarded as parts of the same legislation, and upon the passage of the last act, removing the constitutional objection to the former, it becomes valid in all respects.

FROM SULLIVAN.

Appeal in error from the Circuit Court of Sullivan county. N. HACKER, J.

U. S. YORK and H. H. INGERSOLL for petitioners.

C. J. ST. JOHN, W. D. HAYNES and W. V. DEADERICK for defendant.

MCFARLAND, J., delivered the opinion of the court.

This is a petition for mandamus to compel the Chairman of the County Court of Sullivan county to

issue his warrants to the jurors and officers of court serving as such at a term of a law court recently before held at Bristol in said county. An alternative writ was granted, but dismissed upon the ground that the act of the Legislature establishing the court is unconstitutional and void, and this is the question upon which the cause has been submittled to us, the opposing counsel supporting their respective views with able and exhaustive arguments.

The act in question is ch. 127 of the acts of 1879, passed the 18th March and approved by the Governor the 20th of the same month. The objections to it are that it violates sec. 17 Art. 2 of the Constitution, or that part thereof in the following words: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws shall recite in their caption or otherwise the title or substance of the law repealed, revived or amended."

The specific objections are that the act contains more than one subject, that the subject is not expressed in the title, and that it repeals former laws and does not recite in the caption or otherwise the title or substance of the law repealed.

It is entitled "An act to establish a Chancery and Law Court at Bristol, in the county of Sullivan." The first nine sections relate to a chancery court to be organized and held at Bristol by the Chancellor of the first division at times specified, and defines the extent of its jurisdiction and other matters incident to the court thus established. The remaining sections

provide for the establishment of a law court at Bristol as one of the courts of the first circuit, to be held by the judge thereof at times specified, and other matters incident to said court.

The argument is that this act embraces two subjects, one the establishment of a chancery court, the other the establishment of a law court.

The solution of this question depends in a great measure upon whether we adopt a liberal or a strict construction of the clause in question. A construction might be adopted of such a latitudinous character as virtually to neutralize the beneficial effects intended to be secured. On the other hand, a too rigid and strict construction would, in many instances, unnecessarily embarrass useful legislation.

The duty of the court to pass upon the constitutionality of legislative acts is a very grave and responsible one. Every presumption should be made in favor of the validity of the laws. The members of the Legislature in enacting laws must of necessity judge of their constitutionality in the first instance, and the opinion of that body, which is not conclusive upon the court, is yet entitled to the respectful consideration due from one department of the government to another, and while the Constitution is the supreme law, and the courts should not, out of any mere feeling of deference to the Legislature, hesitate to maintain its supremacy, yet legislative acts should not be subjected to a hypercritical test. If subject to two reasonable constructions, they should be construed so as to give them effect rather than to defeat them.

6—VOL. 3.

They should not be declared void unless they appear to be manifestly so according to the plain letter and spirit of the Constitution. Such are in substance the general principles maintained by Judge Cooley in his standard work, Cooley C. L., p. 182, and also by this court in *Cannon* v. *Mathes,,* 8 Heis.

Coming more directly to the provisions· in question, Judge Cooley says, and his language is quoted with approbation in the case above referred to, that "there has been a general disposition to construe these provisions liberally rather than embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it is adopted."

Again, "the general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated in its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act, would not only be unreasonable, but would actually render legislation impossible." Const. L., p. 144; 8 Heis., 519.

In the case of *Cannon* v. *Matthes,* above referred to, the title of the act passed upon is "an act to fix the State tax upon property," and the first and second sections does fix the tax upon property, but the fourth section increases the tax upon privileges fifty per cent., it was held that the act was valid, that it had but one general object, that was to raise revenue.

A correct view of this question may be obtained

Morrell *v.* Fickle.

by bearing in mind the evils intended to be guarded against. "The interest of these provisions was to prevent the union in the same act of incongruous matters, and of objects having no connection or relation; and with this, to prevent surprise in legislation by having matter of one nature embraced in a bill where the title expressed another." To prevent log-rolling or omnibus bills, and the frauds and corruptions sometimes supposed to prevail in such cases; to prevent smuggling through important measures, as amendments to, or as parts of other laws with which they have no connection, such for instance as attaching a charter for a bank, to a bill granting aid to a railroad, or a section creating a felony, to an act relating to a public road.

Does this act come fairly within the evil to be remedied? Shall we say that the establishment of a chancery court at Bristol is one general subject, and the establishment of a law court is another general subject, and that it is necessary, in order to maintain the integrity of the clause of the Constitution in question, to hold that these two general objects should be accomplished by separate acts. Is the establishment of these two courts at the same place two general subjects, incongruous and without connection or relation with each other? Are the provisions of the act such as to operate as a surprise upon legislators or others, or to open the way to frauds and improper influences, such as are supposed to obtain in "omnibus" or "job" bills? We think not. It can hardly be doubted that a bill to establish a new county might properly

provide for all necessary courts. These would be mere incidents germain to the general subject. The general subject of this bill is not so broad, and we think a proper construction of this act will be to hold that the general subject is the establishment of such, additional courts for Sullivan county as, in the opinion of the Legislature, the public exigencies demanded, and with the general object, the act contains nothing incongruous. A contrary holding would, in our opinion, be to establish a rule so rigid as to embarrass legislation, when such construction is not necessary in order to accomplish the ends designed.

These views also settle that the subject is sufficiently expressed in the title. Treating the general subject of the act as the establishment of such additional courts for Sullivan county as the public exigencies demanded, it is manifest that this general subject is expressed in the title, to-wit., "An act to establish a Chancery and Law Court at Bristol, in Sullivan county." This undoubtedly gives notice of what the act may be expected to contain, and it cannot fairly be said that the title is deceptive or misleading. It is argued that the title indicates but one court, a court having common law and equity jurisdiction, whereas the act provides for two courts, one of chancery and the other of law jurisdiction. This may be the strictly grammatical construction of the language of the title, but the point, though ingeniously pressed, is too fine for practical application.

"The generality of the title is no objection to it so long as it is not made a cover to legislation in-

congruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection." 8 Heis., 519.

We have certainly no disposition to "fritter away" the important and salutory provision of the Constitution in question, but we are not at liberty to subject legislative acts to too rigid and technical criticisms in order to avoid their force, even though the legislative right be thought undesirable. The same session of the Legislature passed a series of acts in relation to the repeal of certain municipal charters, and for the establishment of taxing districts (see chapters 10 and 11), under which the city of Memphis was re-organized as a new municipal government. The validity of the acts was strongly contested, and at the recent term at Jackson the majority of this court held the act valid, after full arguments. The opinions are not now before us, but it will be readily seen upon reference to said acts, that the objections to them are much more serious than to the present act, and the principles decided fully support our present conclusion.

The only remaining question is, that the act repeals former laws without reciting the title or substance of the acts repealed. This has reference to the section of the act fixing the time for holding the law court at Bristol, which are the same days provided by a previous law for holding the circuit court at Blountville, and the title or substance of the previous law is not recited in the title of the present act or otherwise. But at the same session and in a very few days afterward another act (ch. 140) was passed which

is free from objection, changing the times of the court
at Blountville, and avoiding the conflict. If it be
conceded that the section of the act under considera-
tion as to the time of holding said court is obnoxious
to the Constitution for the reason indicated, it would
not, in our opinion, be a sound reason for declaring
the entire act void. The two acts were passed at
the same session, and passed within a few days of the
same time, and may fairly be supposed to be in the
minds of the legislators at the same time, parts of the
same legislation, and when the last act became a law
removing the conflict, there is no good reason why
the former should not be valid in all respects. This
relieves from any further consideration of the question,
whether the clause of the Constitution has reference
to acts merely inconsistent with former laws, and op-
erating as an implied repeal thereof, or only to acts
which simply purport, without more, to repeal former
acts.

The judgment will be reversed, and the cause re-
manded, with directions that a peremptory mandamus
issue.


FREEMAN, J., delivered a dissenting opinion.


This case involves the constitutionality and conse-
quent validity of an act of the Legislature entitled
"An Act to establish a Chancery and Law Court at
Bristol, in the county of Sullivan."

The first nine sections are devoted to the estab-
lishment of a chancery court, if the word establish-

Morrell *v.* Fickle.

ment is appropriate to what is done, to be held at the town of Bristol, and for that purpose in the first section the 17th civil district of the county of Sullivan is made a chancery district, and a court to be held at Bristol for said district by the Chancellor of the first division of the State, two terms per annum, at times appointed. Provisions are then made for a chancery clerk and master, officers to attend said court, that citizens of certain other districts may bring their suits in this court. And then in the 9th section a provision is made that the citizens of the town of Bristol shall bear the expense of building a court house.

We note in these provisions a complete and perfect enactment, covering all that is included in the idea of and incidental to the subject of a chancery court to be held in the town of Bristol. I think the correct principle of construction of the clause of our Constitution requiring that "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title," is, that the title shall express the subject or object of the bill with such distinctness as that on reading the title or hearing it read, we can fairly know what the purpose of the bill is, and that this subject or purpose shall be but one, not two or more objects. When this one subject is thus expressed, then all such things as are incidental to and appropriate to effect the main object expressed may be fairly held to be included. To illustrate, the title of a bill may be to establish a law or circuit court at the town of Bristol in Sullivan

county.    Under this title would be included the requi-
sites of a court—a clerk, officers to attend it, time
and place when and where held, with the jurisdiction
of said court.    All this would be fairly included un-
der the title of the bill.    But I am unable to see
how a chancery court could be included under such
a title, unless we should assume that a law court in-
cludes a chancery court, or *e converso* a chancery court
might be incidental to a law court.    If this be so
it is because they are separate and distinct subjects or
objects, having no necessary or natural connection the
one with the other.    Conceding this, however, and it
follows inevitably to my mind that the title "to es-
tablish a chancery and law court at Bristol" must ex-
press two subjects, and therefore violate this clause of
our Constitution.    The title is held by the majority
to express the subject of the bill, and to mean a
chancery and a circuit court.    Concede this, and I
am unable to see how the conclusion is avoided that
there are not two subjects expressed in the title, un-
less we hold that chancery and law courts are the
same things, or are not different subjects or objects.
We know that one may exist without the other under
our system, and that each is a distinct entity, having
well defined characteristics of diversity.    In fact, we
have in this bill a most striking illustration of the
essential independence of the two subjects.    The first
nine sections are exclusively devoted to the establish-
ment of a chancery court; the next ten, we believe,
to the law court.    All the provisions of the first
nine sections apply to the subject of a chancery court.

Morrell *v.* Fickle.

The necessary incidental legislation for the establishment of such a court is complete, and then another and distinct subject, a law court, is taken up, and another and different set of arrangements made for its existence. That these subjects are different, and impossible to be made one, is shown by the fact that it would be utterly incongruous, if the provisions for the one should be applied to the other. The matter for the chancery court could not be placed in or be a part of the provisions for the law court without totally subverting the object designed. How, then, can matter diverse relating to a subject requiring entirely different arrangements for its operation be held to be identical with and the same as that other thing from which it so essentially differs? In other words, the subject of the establishment of a chancery court at Bristol, differs from the subject of the establishment of a law or circuit court at that place by the whole width of the well recognized and long established differences between the two courts, administering different remedies for different rights, defined by our jurisprudence, and by different forms of procedure. This difference is recognized both in our Constitution and in all our legislation in reference to the two kinds of courts. In view of this, I am unable to see how the establishment of these different things, essentially different in their nature, is but one subject. I think the title should be held to express two subjects, and most assuredly if it does not the body of the act does, and this is equally fatal.

For these and other reasons that might be given, I am compelled to dissent from the opinion of the majority of my brethren.